GREENBERG TRAURIG, LLP
Vincent H. Chieffo *(SBN 49069)*
*ChieffoV@gtlaw.com*
Breeanna Brewer (SBN 312269)
*BrewerB@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:   310-586-7700
Facsimile:    310-586-7800

Attorneys for Defendant
Katheryn Hudson p/k/a Katy Perry

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| BACKGRID USA INC., a California corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>KATHERYN HUDSON p/k/a KATY PERRY; and DOES 1-10, inclusive,<br><br>          Defendant. | Case No.: 2:19-cv-09309-AB-MRWx<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F. R. CIV. P. 12(b)(6), AND, IN THE ALTERNATIVE, FOR AN INQUIRY TO THE REGISTER OF COPYRIGHTS PURSUANT TO 17 U.S.C. § 411(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Proposed Order; Request for Judicial Notice; Declaration of Vincent H. Chieffo; Proposed Order]<br><br>Date:           March 6, 2019<br>Time:           10:00 a.m.<br>Courtroom:    7B<br><br>Judge:          Honorable André Birotte Jr.<br>Action Filed:  October 29, 2019 |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 6, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7B of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Defendant Katheryn Hudson p/k/a Katy Perry ("Defendant") will, and hereby does, move the Court for an order dismissing the Complaint filed herein by Plaintiff BackGrid USA Inc. ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, for a Court inquiry to the Register of Copyrights pursuant to 17 U.S.C. 411(b)(2).

The Complaint fails to state a claim for which relief may be granted and should be dismissed in its entirety.

First, the photo that Plaintiff claims was infringed is not subject to copyright and no claim of infringement can be based upon it being copied. Plaintiff's Complaint alleges that Defendant infringed its copyright in a photo of Defendant and her companions dressed and wearing copyrighted makeup and prosthetic devices to appear as Bill and Hillary Clinton and in a unique copyrighted mask to appear as a "Trump Troll." These prior copyrightable works pervade that allegedly infringed photo rendering it an uncopyrightable, unauthorized derivative work.

Second, Plaintiff lacks standing to assert a copyright claim that accrued months, if not years, before Plaintiff claims to have acquired ownership of the allegedly infringed copyright from an entity that had originally acquired that copyright from the author of the photo. Plaintiff fails to allege that it also acquired the right to sue for pre-existing infringements that accrued before it obtained ownership of the copyright.

Third, Plaintiff lacks standing because the application for copyright registration of the allegedly infringed photo is invalid as a result of it including knowing and material inaccuracies which, if known to the Register of Copyrights, would have caused that application to be refused. Prior to dismissing the complaint on this ground, however, the Court is required by 17 U.S.C. § 411(b) to inquire directly of the Register to learn the Registers' views as to whether those inaccuracies, if known to the Register, would have

1

caused the registration to be refused. Defendant requests that the Court make the statutorily required inquiry to the Register.

Fourth, even if Plaintiff does have standing and there is a valid copyright in the allegedly infringed photo, Defendant's reproduction of that photo was a fair use and not an infringement of copyright.

No amendment would cure the defects in the Complaint, and the Court therefore should dismiss the Complaint without leave to amend.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 17, 2020 and in a subsequent exchange of written positions on the issues raised by the instant motion.

Dated: February 3, 2020                    GREENBERG TRAURIG, LLP


By:    /s/ Vincent H. Chieffo
       Vincent H. Chieffo
       Attorneys for Defendant Katheryn Hudson p/k/a
       Katy Perry

ACTIVE48547764

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION. ........................................................................................1

II.  SUMMARY OF FACTS. ............................................................................2

    A.   PLAINTIFF'S ALLEGEDLY INFRINGED SNAPSHOT. .........................2

    B.   THE GROUP SNAPSHOT COPYRIGHT REGISTRATION.....................3

    C.   THE UNDERLYING PRIOR WORKS THAT PERVADE THE
         SNAPSHOT DEPOSIT SERIES. ...................................................4

    D.   DEFENDANT'S ALLEGEDLY INFRINGING INSTAGRAM
         CREDIT POST...................................................................5

III. ARGUMENT................................................................................5

    A.   MOTION TO DISMISS STANDARD. ..................................................5

    B.   PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT
         INFRINGEMENT. .......................................................................7

         1.   Plaintiff Does Not Own A Valid Copyright In The Snapshot
            Because The Snapshot Is An Unoriginal and Non-
            Copyrightable Unauthorized Derivative Work..................................7

         2.   The Complaint Fails To Allege That Plaintiff Acquired The
            Right To Sue For Accrued Infringements When It Acquired the
            Group Snapshot Copyright. ...............................................11

         3.   Plaintiff Lacks Standing Because The Purported Copyright
            Registration For The Snapshot Is Invalid For Failure To
            Disclose That It Is An Unauthorized Derivative Work. ....................13

         4.   Defendant's Instagram Credit Post Is A Fair Use Of The
            Snapshot And Not an Infringement. .......................................15

             i.   Purpose and Character of the Use. ...........................15

             ii.  The Nature of the Copyrighted Work......................17

             iii. Amount and Value of the Portion Used. ..................18

iv.     Effect of the Use Upon the Potential Market. .........................19

5.     Plaintiff's Contributory Infringement Claim Also Fails....................20

IV.     CONCLUSION.................................................................................21

*ACTIVE48547764*

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ...................................................................................20

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
   944 F.2d 971 (2d Cir. 1991) .....................................................................................11

*Anderson v. Stallone*,
   No. 87-0592, 1989 WL 206431 (C.D. Cal. April 26, 1989) .........................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................6, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................5, 6

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)..........................................................................16, 17, 18, 19

*Carell v. Shubert Org., Inc.*,
   104 F. Supp. 2d 236 (S.D.N.Y. 2000) .................................................................9, 10

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) ..................................................................................21

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   870 F.3d 978 (9th Cir. 2017) ....................................................................................11

*Durham v. Indus. v. Tomy Corp.*,
   630 F. 2d 905 (2d Cir. 1980) .....................................................................................9

*Eden Toys, Inc. v. Florelee Undergarment Co. Inc.*,
   697 F.2d 27 (2d Cir 1982) ........................................................................................9

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
   122 F.3d 1211 (9th Cir. 1997) .......................................................................7, 8, 9, 10

*Fanni v. Northrop Grumman Corp.*,
   No. CV 98-5197 DT, 2000 WL 35905106 (C.D. Cal. Apr. 10, 2000)...........................6

iii

*Faulkner v. Nat'l Geographic Enters. Inc.*,
    409 F.3d 26 (2d Cir. 2005) ........................................................................ 20

*GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*,
    782 F. Supp. 763 (W.D.N.Y. 1991) ........................................................... 14

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
    925 F. 3d 1140 (9th Cir. 2019) .................................................................. 14

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ..................................................................... 16

*L.A. News Serv. v. CBS Broad., Inc.*,
    305 F.3d 924 (9th Cir. 2002) ..................................................................... 16

*Masquerade Novelty, Inc. v. Unique Indus., Inc.*,
    912 F.2d 663 (3d Cir. 1990) ...................................................................... 10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ................................................................................... 20

*Mountain v. Mehron, Inc.*,
    No. LACV1800080JAKMRWX, 2018 WL 5024918 (C.D. Cal. Aug. 15,
    2018) ..................................................................................................... 9, 10

*Mourabit v. Klein*,
    393 F. Supp. 3d 353 (S.D.N.Y. 2019) .......................................................... 9

*N. Coast Indus. v. Jason Maxwell, Inc.*,
    972 F.2d 1031 (9th Cir. 1992) ...................................................................... 8

*Paramount Pictures Corp. v. Axanar Prods., Inc.*,
    No. 2:15-CV-09938-RGK-E, 2017 WL 83506 (C.D. Cal. Jan. 3, 2017) .................... 10

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .................................................................... 18

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ....................................................................... 6

*Philpot v. Media Research Ctr. Inc.*,
    279 F. Supp. 3d 708 (E.D. Va 2018) ......................................................... 16

*Pickett v. Prince*,
    207 F.3d 402 (7th Cir. 2000) ....................................................................... 9

ACTIVE48547764

*R. Ready Prods., Inc. v. Cantrell*,
   85 F. Supp. 2d 672 (S.D. Tex. 2000) ........................................................... 14

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir. 2013) .................................................................... 11

*Russ Berrie & Co. v. Jerry Elsner Co.Inc.*,
   482 F. Supp. 980 (S.D.N.Y. 1980) ............................................................ 14

*Seltzer v. Green Day, Inc.*,
   725 F.3d 1170 (9th Cir. 2013) ............................................................ 16, 18

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F.3d 881 (9th Cir. 2005) ...................................................................... 11

*Sobhani v. @Radical.Media, Inc.*,
   257 F. Supp. 2d 1234 (C.D. Cal. 2003) ...................................................... 8

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*
   137 S. Ct. 1002 (2017) ................................................................................ 10

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ........................................................................ 6

*Van Buskirk v. Cable News Network, Inc.*,
   284 F.3d 977 (9th Cir. 2002) ........................................................................ 6

*Wolf v. Travolta*,
   167 F. Supp. 3d 1077 (C.D. Cal. 2016) ...................................................... 8

*Yang v. Mic Network, Inc.*,
   405 F. Supp. 3d 537 (S.D.N.Y 2019) .................................................. 16, 17

**Federal Statutes**

17 U.S.C. § 102 ................................................................................................ 8, 10

17 U.S.C. § 107 .............................................................................................. 15, 16

17 U.S.C. § 201(a) ................................................................................................ 11

17 U.S.C. § 201(d)(2) ............................................................................................ 11

17 U.S.C. § 204(a) ................................................................................................ 11

17 U.S.C. § 410(c) .................................................................................................. 8

*ACTIVE48547764*

17 U.S.C. § 411(a) ........................................................................ 1, 7, 13

17 U.S.C. § 411(b) ............................................................................. 1, 14

17 U.S.C. § 411(b)(1) ............................................................................. 13

17 U.S.C. § 411(b)(2) .........................................................................,2, 14

17 U.S.C. § 412 ......................................................................................... 13

17 U.S.C. § 501(b) ........................................................................ 1, 7, 11

**Rules**

Federal Rules of Civil Procedure, Rule 8(a)(2) ........................................ 6

Federal Rules of Civil Procedure, Rule 12(b)(6) ................................ 1, 5, 6

**Treatises**

1 M. Nimmer and D. Nimmer, *Nimmer on Copyright*  .................................. 8, 9

*ACTIVE48547764*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION.**

The Court should grant Defendant Katheryn Hudson's ("Defendant") Motion to Dismiss (the "Motion") because the Complaint (Dkt No. 1) ("Complaint") filed by Plaintiff BackGrid USA Inc. ("Plaintiff") fails based on its express allegations, materials subject to Judicial Notice, and applicable law. Plaintiff's claims are that: (i) Plaintiff owns a copyright to a snapshot (the Snapshot) of Defendant and her companion in character as Bill and Hillary Clinton, donning specialized and copyrightable makeup (including prosthetics), and her other companion dressed as a "Trump Troll" in a unique mask arriving at a 2016 Halloween party; and, (ii) Defendant infringed that copyright by reproducing it on an Instagram post with her comments giving credit to the makeup and costume designers that were the authors of the prior copyrightable works reproduce in the allegedly infringes Snapshot.

The complaint should be dismissed because it cannot allege a valid copyright in the Snapshot because the Snapshot is an unoriginal and unauthorized derivative work reproducing the copyrighted creative works of makeup, design, prosthetics, and mask.

Plaintiff does not sufficiently allege standing under 17 U.S.C. § 501(b). Plaintiff only alleges that it acquired ownership of the purported copyright in the Snapshot, months or perhaps years after the alleged infringement accrued, but it does allege that it acquired the additional right to sue infringement accruing before it acquired ownership of the supposed copyright in the Snapshot.

Plaintiff also lacks standing under 17 U.S.C. § 411(a) because the copyright registration for the Snapshot Deposit Series is invalid pursuant to 17 U.S.C. § 411(b) as a result of it containing knowing inaccuracies that if known to the Register of Copyrights would have caused the registration to be refused.

Finally, even if Plaintiff does have standing and a valid copyright in the Snapshot, Defendant's inclusion of a cropped version of that Snapshot on her Instagram post with her comments giving credit and authorship attribution to the artists who created the

*ACTIVE48547764*

copyrighted works reproduced without permission in the Snapshot is a fair use of the snapshot and not an infringement.

The Court should grant the Motion and dismiss the Complaint for failure to state a claim without leave to amend or, in the alternative, to submit the inquiry to the Register of Copyrights required by 17 U.S.C. § 411(b)(2).

## II.   SUMMARY OF FACTS.[1]

### A.   PLAINTIFF'S ALLEGEDLY INFRINGED SNAPSHOT.

Defendant is a famous American singer, songwriter, actress, businesswoman, and entrepreneur. (Complaint, ¶ 5.). On October 28, 2016, Defendant and her companions arrived at actress Kate Hudson's annual Halloween party (the "Party"). (Complaint ¶ 8; RJN, Ex. 1). Defendant appeared at the Party in extensive and specialized creative makeup and prosthetics, wardrobe costumes, and masks so as to appear as Bill and Hillary Clinton, and a third individual in a unique mask that was created by combining elements of Donald Trump and a troll. (Complaint Exhibit B; RJN, Ex. 1). Indeed, Defendant's and her companions' actual appearances were so transformed before arriving at the Party that none of them can actually be identified in Plaintiff's allegedly infringed Snapshot.

Upon Defendant's arrival at the party, a paparazzi, Devone Byrd (the "Photographer") stood outside snapping in quick succession a series of snapshots of the trio. On their own initiative and at their own direction, Defendants and her companions posed upon arrival at the Party – pointing, waving, making a variety of facial expressions, and positioning themselves directly towards the Photographer. (*See* Defendant's Request for Judicial Notice ("RJN"), Ex. 1; Complaint Ex. B.).

---

[1] This summary is based on the well plead factual allegations of the Complaint, the exhibits to the Complaint, and the documents incorporated into the complaint of which this Court may take judicial notice. *See infra* at § III A; Defendants' Request for Judicial Notice ("RJN"), Exhibits 1 – 3.

ACTIVE48547764

1    The Complaint does not allege that the Photographer directed or posed Defendant

2    and her companions in any manner, or in any way influenced their expressions, makeup

3    designs, mask designs, or clothing, or that the Photographer was in any way involved in

4    the lighting selected for the Snapshot or the timing of it, and, of course, the allegedly

5    infringed Snapshot was not a studio composition. Rather, the allegedly infringed

6    Snapshot was one of a series of nine photographs quickly created by a "point and click"

7    technique in a public setting solely to document the arrival of Defendant and her

8    companions at the Party. (Complaint ¶ 8, Ex. A; RJN Ex. B.).

9    **B.     THE GROUP SNAPSHOT COPYRIGHT REGISTRATION.**

10    On January 20, 2017, well after the allegedly infringed Snapshot was created on

11    October 28, 2016 (and well after Defendant first displayed the Snapshot on her Instagram

12    post, described below, §II D) AKM-GSI Media, Inc. ("AKM-GSI") filed an application

13    for a group copyright registration for a series of nine photographs, including the allegedly

14    infringed Snapshot entitled, "Katy Perry honors Hillary Clinton at Kate Hudson's

15    Halloween Party." (Complaint, Ex. A; RJN Ex. 1, the deposit copy for that registration

16    (the "Snapshot Deposit Series"). AKM-GSI's application claims ownership of the group

17    registration copyright by a written transfer of ownership from the Photographer (Mr.

18    Byrd) that originally took those nine snapshots. Id.  However, AKM-GSI's application

19    did not disclose that the nine snapshots were each unauthorized derivative works

20    incorporating the Prior Works (as defined below, § II C) nor did the application limit its

21    claim of authorship to whatever was original and created (if anything) when the

22    Photographer took those snapshots using only his "point and click" technique. *Id*. Rather,

23    AKM-GSI's application falsely claimed that the Photographer was the sole author and

24    creator of the entire contents of the nine snapshots covered by the group copyright

25    registration. *Id.*

26    Plaintiff is not listed as the copyright claimant on the copyright registration

27    secured by AKM-GSI as claimant. (Complaint Ex. A). Plaintiff's only allegations

28    concerning why it is entitled to prosecute this infringement action are the legal

3

conclusions that "BackGrid, through its predecessor AKM-GSI Media, Inc., filed for copyright registration" for the allegedly infringed Snapshot and that "BackGrid is the owner of all rights, title, and interest in the copyright." (*Id.* at ¶¶ 9, 20). Nothing else is alleged regarding Plaintiff's claimed ownership of the copyright or the right to sue for Defendants' alleged infringement of the Snapshot that occurred on October 29, 2016, months, if not years, before BackGrid may have acquired any ownership of the purported copyright to the allegedly infringed Snapshot.

> ### C.    THE UNDERLYING PRIOR WORKS THAT PERVADE THE SNAPSHOT DEPOSIT SERIES.

The snapshots in the Snapshot Deposit Series, including the allegedly infringed Snapshot (number .008 in the Series), are not truly photographs of Defendant and her companions. Rather, the entire appeal and content of the snapshots are based on their unauthorized incorporation of the underlying artistic creations that make Defendant and her companions unrecognizable and instead appear as Bill and Hillary Clinton and a "Trump Troll." Those underlying artistic creations are themselves copyrighted works – the hair, makeup, prosthetics, wardrobe, and mask (the "Prior Works"). The creators of the specialized hair, makeup, and prosthetic designs are Tony Gardner (@tonygardner), Gabriel De Cuton (@Makeup_man), Carlton Coleman (@Carltoncoleman_makeupfx), and (@mthreemfx). (*See* Complaint, Ex. B) The creator of the wardrobes was Jamie Mizrahi (@sweetbabyjamie). (*Id.*) The "Trump toll" mask was created by Johnny Wujek (@jwujek) and a clothing brand called Shokra (@shokrala). (*Id.*) The Snapshot Deposit Series and AKM-GSI's copyright application does not credit any of the creators/authors of the Prior Works as authors. (*See* RJN, Ex. 1.) The Complaint does not allege that the Photographer, or AKM-GSI. or Plaintiff ever obtained the consent of anyone to create the snapshot derivative works based on and incorporating the Prior Works or to register a group copyright for the snapshot derivative works. Without such permission from the authors of the Prior Works, any licensing of the allegedly infringed snapshot or of the

4

other eight snapshots in the Snapshot Deposit Series would infringe the copyrights to the Prior Works.

**D.  DEFENDANT'S ALLEGEDLY INFRINGING INSTAGRAM CREDIT POST.**

Defendant posted a cropped copy of the Snapshot and her additional comments naming and crediting a number of individuals who created and were the authors of the Prior Works reproduced in the allegedly infringed Snapshot on her personal Instagram account (the "Instagram Credit Post") on October 29, 2016, the same day that the Snapshot Deposit Series was published according to the registration. (Complaint ¶ 11; Exs. A-B.) The Complaint attaches the allegedly infringing Instagram Credit Post, which does not exactly match any of the nine images in the Snapshot Deposit Series. (*Compare* RJN Ex. 1, *with* Complaint, Ex. B.). The Instagram Credit Post, however, is a version of snapshot number .008 in the Snapshot Deposit Series edited (and cropped) so that it would be more focused on the Prior Works. It also adds commentary to tag and identify the creators/authors of the Prior Works for the purpose of giving credit and attribution to those creators/authors. (Complaint, Ex. B.) The Complaint does not, and cannot allege, that Defendant made an effort to commercially exploit the Instagram Credit Post. Further, the Instagram Credit Post itself does not contain any advertisements for commercial products. *Id.* Finally, the Complaint does not, and cannot allege, that Defendant licensed the Instagram Credit Post to other publications.

**III.  ARGUMENT.**

**A.  MOTION TO DISMISS STANDARD.**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide the "grounds" of its "entitle[ment] to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Thus, when ruling on a Rule 12(b)(6) motion, "the court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007); *see also Twombly*, 550 U.S. at 555.

Further, while review on a motion to dismiss under Rule 12(b)(6) generally is confined to the allegations of the complaint, a court may consider documents attached to or incorporated by reference into a complaint where neither party disputes their authenticity. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Fanni v. Northrop Grumman Corp.*, No. CV 98-5197 DT AIJX, 2000 WL 35905106 at *6 (C.D. Cal. Apr. 10, 2000) ("Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

Accordingly, even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if, as here, the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("In this case, the district court relied on the doctrine of "incorporation by reference" to consider documents that were referenced extensively in the complaint and were accepted by all parties as authentic.").

Defendant has concurrently submitted her request that this Court take judicial notice of three documents: a copy of the deposit copied submitted in connection with the registration of the purported copyright to the copyright allegedly infringed Snapshot (Complaint Ex. A); and copies of two documents setting forth the results of two searches on the California Secretary of State's website for current corporate information regarding

*ACTIVE48547764*

Plaintiff and AKM-GSI Media, Inc. (RJN Exs. 1-3.) For the reasons set forth in the RJN, this Court should take judicial notice of these documents.

As explained below, based on these standards, Plaintiff's claims clearly fail. The Court therefore should grant the Motion in its entirety and dismiss the Complaint with prejudice.

**B.    PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT.**

Plaintiff's Complaint fails to state a claim for copyright infringement for four reasons. First, the purported copyright in the Snapshot is invalid because the Snapshot is an unauthorized derivative work and the Prior works pervade the Snapshot. Second, Plaintiff lacks standing under 17 U.S.C. § 501(b) for failure to allege ownership of the right to sue for infringements that accrued before it acquired any ownership of the purported copyright to the Snapshot, Third, Plaintiff lacks standing under 17 U.S.C. § 411(a) because its copyright registration is invalid 501(b) since the application did not disclose that the Snapshot is an unauthorized derivative work. Finally, Defendant's Instagram Credit Post amounts to fair use, and not an infringement, because she edited the photograph to change the focus to the Prior Works and to add commentary on the Image giving credit and attribution to the creators of the Prior Work.

**1.    Plaintiff Does Not Own A Valid Copyright In The Snapshot Because The Snapshot Is An Unoriginal and Non-Copyrightable Unauthorized Derivative Work.**

To state a claim for copyright infringement, Plaintiff must allege that it owns a valid copyright in the allegedly infringed Snapshot. *See, e.g.*, *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998). Based on the Complaint, its exhibits, and the deposit copy for the Snapshots copyright registration (RJN Ex. 1), Plaintiff does not own a valid copyright to the allegedly infringed Snapshot and the Complaint must be dismissed.

Copyright protection extends only to "original works of authorship." 17 U.S.C. § 102. While the Plaintiff's group copyright registration creates an evidentiary presumption that Plaintiff's claimed copyrighted work is "original" and valid (17 U.S.C. § 410 (c)) that "statutory presumption of validity can be rebutted if the alleged infringer demonstrates that the plaintiff's work 'is not original but copied from another's work.'" *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1090 (C.D. Cal. 2016) (quoting *Entm't Research Grp., Inc.* 122 F.3d at 1218 which in turn quoted *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992). If such copying is sufficiently demonstrated, courts may "deny copyright to derivative works in which [a] pre-existing work *tends to pervade the entire derivative work*." *Wolf,* 167 F. Supp. 3d at 1090-1091 (emphasis in original, quoting 1 M. Nimmer and D. Nimmer, *Nimmer on Copyright* § 3.06) hereinafter "*Nimme*r § __."

Nimmer relies for that conclusion in part upon District Judge Wilson's decision in *Sobhani v. @Radical.Media, Inc.*, 257 F. Supp. 2d 1234, 1239-1200 (C.D. Cal. 2003). In *Sobhani*, plaintiff alleged that his 'spec' television commercials for Jack-in-the-Box submitted to defendants had been infringed by defendants' subsequently created Jack-in-the-Box television commercial. Judge Wilson granted defendants summary judgment, finding that the allegedly infringed "spec" commercials were themselves unauthorized derivative works that included "actual footage copied from previously-aired Jack-in-the-Box television commercials" and concluding that "[b]ecause copyrighted work pervades [plaintiff's] derivative work. and because Plaintiff used the previous work without authorization, no copyright protection is afforded" to the plaintiff's "spec" commercials. *Id*. at 1236, 1200.

The rule that an unauthorized derivative work cannot be the subject of copyright where the pre-existing work "pervades" the derivative work has been applied in other cases in the Ninth and other Circuits. *See*, *Entm't Research Grp., Inc.* 122 F.3d at 1214, 1218 - 1224 (denying copyright protection to plaintiff's allegedly infringed three dimensional inflatable costumes that were reproductions of two dimensional copyrighted

1   cartoon characters licensed to plaintiff because those costumes were not sufficiently

2   original); *Durham v. Indus. v. Tomy Corp.*, 630 F. 2d 905, 908 -09 (2d Cir. 1980)

3   (denying copyright protection to plaintiff's allegedly infringed three wind-up plastic

4   figures reproducing two dimensional copyrighted Disney cartoon characters because

5   those wind-up plastic toys lacked sufficient originality) (cited with approval and followed

6   in *Entm't Research Grp., Inc.* 122 F.3d at 1220 - 1224); *Anderson v. Stallone*, No. 87-

7   0592 WDKGX, 1989 WL 206431 *6, 8-11, (C.D. Cal. April 26, 1989) (summary

8   judgement granted to defendant finding that no portion of plaintiff's allegedly infringed

9   unauthorized derivative work screen play was entitled to copyright protection); *Pickett v.

10  Prince*, 207 F.3d 402 (7th Cir. 2000) (affirming dismissal of copyright infringement

11  claim because plaintiff's allegedly infringed guitar design was an unauthorized derivative

12  work not sufficiently original to be subject to copyright); *Eden Toys, Inc. v. Florelee

13  Undergarment Co. Inc.*, 697 F.2d 27, 34 n. 6 (2d Cir 1982) (stating in *dicta* that if the

14  plaintiff had not secured a license to create its derivative work, "its derivative copyrights

15  would be invalid, since the pre-existing illustrations used without permission would

16  'tend[] to pervade the entire derivative work.'" [citing *Nimmer* at § 3.06]).

17        Application of the rule that an unauthorized derivative work cannot be the subject

18  of copyright where the pre-existing work "pervades" the derivative work, mandates

19  dismissal of the Complaint.

20        The pre-existing makeup designs and masks reproduced in the allegedly infringed

21  Snapshot are pre-existing copyrightable creative works. *See, e.g., Mountain v. Mehron,

22  Inc.*, No. LACV1800080JAKMRWX, 2018 WL 5024918, at *14 (C.D. Cal. Aug. 15,

23  2018) (makeup design entitled "Under the Skin" was copyrightable); *Carell v. Shubert

24  Org., Inc.*, 104 F. Supp. 2d 236, 247 (S.D.N.Y. 2000) ("The [makeup] [d]esigns contain

25  the requisite degree of originality, and are fixed in tangible form on the faces of the Cats

26  actors."); *Mourabit v. Klein*, 393 F. Supp. 3d 353, 360 (S.D.N.Y. 2019), *order vacated in

27  part on reconsideration*, No. 18 CIV. 8313 (AT), 2019 WL 4392535 (S.D.N.Y. Sept. 13,

28  2019) ("[M]akeup artistry fits within the 'pictorial, graphic, and sculptural works'

category 'in a broad sense.') (citing 17 U.S.C. § 102); *Paramount Pictures Corp. v. Axanar Prods., Inc.*, No. 2:15-CV-09938-RGK-E, 2017 WL 83506, at *3 (C.D. Cal. Jan. 3, 2017) (Klingon and Vulcan makeup and prosthetics copyrightable).

Further, artistic aspects of costumes that "'can be identified separately from, and are capable of existing independently of, the utilitarian purpose of the costumes' may be copyright protectable." *Paramount Pictures Corp. v. Axanar Prods., Inc.*, No. 2:15-CV-09938-RGK-E, 2017 WL 83506, at *5 (C.D. Cal. Jan. 3, 2017) (citing *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1221 (9th Cir. 1997)); *see also Star Athletica, L.L.C. v. Varsity Brands, Inc.* 137 S. Ct. 1002 (2017).

Finally, courts have consistently treated masks as copyrightable. *See, e.g., Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 670 (3d Cir. 1990) (finding a mask of a pig nose was copyrightable).

Here, the Prior Works undeniably pervade the allegedly infringed Snapshot. Two individuals in that Snapshot are wearing highly artistic and specialized makeup designs (incorporating not just detailed makeup, but also prosthetics, and wigs) in order to make them look like Bill and Hillary Clinton. Much like the makeup design in *Mountain* and *Carell*, here Defendant and her guests had to sit through hours of hair and makeup and even had to wear prosthetics that changed the entire structure of their face. Further, the individual dressed as a "Trump Troll" is wearing a unique facial mask created to combine elements of Donald Trump and a troll. All of the Prior Works pervade and in fact are the essence of the allegedly infringed Snapshot.

The Complaint fails to allege that the photographer obtained consent to incorporate the Prior Works into the derivative Snapshot Deposit Series from the designers/creators of the underlying makeup and masks that pervade the photographs.  BackGrid's alleged copyright is an unauthorized derivative work incorporating the Prior Works and the claimed copyright to that Snapshot is invalid.  Because BackGrid holds no valid copyright in the allegedly infringed Snapshot, the Complaint should be dismissed.

2.  **The Complaint Fails To Allege That Plaintiff Acquired The Right To Sue For Accrued Infringements When It Acquired the Group Snapshot Copyright.**

According to the Copyright Act, only the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is owner of it." 17 U.S.C. § 501(b). Copyright initially vests in the author of the work. *Id.* § 201(a). An original author can assign its copyright (*see* 17. U.S.C. § 201(d)(2)), "but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *see also Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (en banc) (adopting the Second Circuit's decision in *ABKCO Music, Inc.*); *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 985 (9th Cir. 2017) (upholding *Silvers*). "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly unauthorized agent." 17 U.S.C. § 204(a). *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) (upholding grant of motion to dismiss because *Righthaven* lacked standing because it did not have exclusive rights in the copyright according to the contract transferring rights).

Here, the Complaint fails to make the necessary allegations to show Plaintiff's entitlement to bring the Photographer's accrued claims. The Complaint does not allege any relationship between Plaintiff and the Photographer and Plaintiff is not listed on the copyright registration for the Snapshot Deposit Series. (Complaint, Ex. A) The registration specifically lists Devone Byrd as the author of the Snapshot Deposit Series

11

*Id.* The Complaint also does not allege that the Photographer assigned its copyright and accrued claims to AKM-GSI.[2]

Further, Plaintiff is not even the first transferee of any supposed assigned right to the copyright for the Snapshot Deposit Series. The Complaint is not brought by AKM-GSI, the original transferee, but instead is brought by Plaintiff, a supposed second transferee that was transferred the copyright to the Snapshot Deposit Series long after the Snapshot and Defendant's Instagram Credit Post were first published and long after AKM-GSI was aware of the alleged infringement claim. The Complaint does not allege that AKM-GSI assigned the purported copyright or any accrued claims to Plaintiff, and concedes that the Photographer did not transfer any rights to Plaintiff. (Compl., Ex. A.) Instead, the Complaint simply alleges Plaintiff "through its predecessor AKM-GSI Media, Inc., filed for copyright registration. . . ." (*Id.* at ¶ 9.) Later the Complaint makes the conclusory allegation that Plaintiff "is the owner of all rights, title, and interest in the copyright." (*Id.* at ¶ 20) But these conclusory allegations are insufficient. *Iqbal*, 556 U.S. at 678. First, the statement that AKM-GSI was BackGrid's predecessor is insufficient and ambiguous. Did AKM-GSI Media, Inc. merge with BackGrid? Did AKM-GSI transfer its rights in the copyright to BackGrid? As alleged it is unclear. Moreover, government records show that the entities are distinct and both active, which makes the use of the word "predecessor" even more confusing. (*See* RJN Exs. 2, 3 [California Business Entity Search Results]).[3]

---

[2]  Defendant does not however dispute this, as Plaintiff provided a copy of Devone Byrd's copyright transfer agreement to Defendant in a letter dated August 24, 2017.

[3] While we do not know the terms of any copyright transfer or of how or why AKM-GSI may be Plaintiff's "predecessor" with respect to copyright ownership, we do know that neither the Photographer nor AKM-GSI is entitled to any compensation based on the outcome of this litigation because Plaintiff has not identified either one of them on its Certification and Notice of Interested Parties (Dkt. No. 7). Apparently, the Photographer's lack of any potential economic benefit from the instant infringement claim is true though Plaintiff alleges that it currently "represents" the Photographer that shot the allegedly infringed Snapshot.

*ACTIVE48547764*

Second, even if Plaintiff is the current owner of all rights in the copyright, it does not follow that Plaintiff is the owner of accrued claims for infringement allegedly committed in October 2016, long before it owned any rights in the Snapshot Deposit Series. In order to overcome a motion to dismiss, Plaintiff would have had to allege that (i) there was a written assignment of the copyright to AKM-GSI that expressly transferred the exclusive right to assert the Photographer's accrued claims; and (ii) thereafter, there was another written assignment of the copyright from AKM-GSI transferring to Plaintiff the exclusive right to assert the Photographer's accrued claims. Plaintiff's Complaint fails to make these allegations.

Accordingly, Plaintiff's Complaint should be dismissed for lack of standing.

### 3.   Plaintiff Lacks Standing Because The Purported Copyright Registration For The Snapshot Is Invalid For Failure To Disclose That It Is An Unauthorized Derivative Work.

Plaintiff's registration of a copyright in the Snapshot Deposit Series is invalid since the application did not disclose that all of the snapshots in Snapshot Deposit Series are unauthorized derivative works. The Copyright Act requires an author to register a copyright prior to filing a civil action for infringement. 17 U.S.C. §§ 411(a), 412. Section 411(b) (1) specifically states that a certificate of registration does not satisfy the requirements to register the work prior to filing a civil action if (A) inaccurate information was included in the application with knowledge that it was inaccurate, and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. However, a Court may not dismiss an action or invalidate a copyright registration under these circumstance before submitting a request to the Register of Copyrights to opine on whether the inaccuracies were material and would, if known, have caused the Register to reject the application. The statute provides that "in any case in which inaccurate information described under paragraph (1) is alleged, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse

13

registration.'' 17 U.S.C.A. § 411(b)(2) (emphasis added); *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F. 3d 1140, 1143, 1148 (9th Cir. 2019)

Accordingly, if the Court agrees with Defendant that the record before it demonstrates that knowingly inaccurate information was included in the registration application for the snapshots (Complaint Exhibit A) registration, Defendant requests that this action be stayed pending submission of the mandatory request to the Register and receipt of a formal response to that request.

The Ninth Circuit has found under current law (17 U.S.C. § 411(b)) that a certificate of registration does not satisfy the requirements to register the work prior to filing a civil action if inaccurate information was knowingly included on the application and that additional showing of fraud is required under the statute. *Gold Value Int'l Textile, Inc,* 925 F. 3d at 1147-1148.[4]

Here, inaccurate information was knowingly included in the application for copyright registration of the Snapshot Deposit Series because the application did not state that the photographs were unauthorized derivative works of copyrighted material and did not identify the Prior Works as being excluded from the scope of copyright claimed in the Snapshot Deposit Series. Moreover, the Snapshot Deposit Series was not registered

---

[4] Before the 2008 enactment of the current Section 411(b), it was equally the case that when a copyright registrant fails to disclose that the submitted work is copied from another copyrighted work this is evidence of knowingly including inaccurate information. *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 692 (S.D. Tex. 2000) (finding knowing misrepresentation where copyright registrant failed to disclose that the "overall concept behind and numerous elements of Plaintiffs' registered works are plainly copied from existing works by the Ritz Corporation and Presidential"); *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 775 (W.D.N.Y. 1991) (finding a knowing misrepresentation where copyright registrant of an illustration of a label failed to disclose the label itself); *Russ Berrie & Co. v. Jerry Elsner Co.Inc.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980) (holding that "the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement.")

until the last week to allow an owner of the copyright and accrued claims to file a civil action for infringement, and three months after Defendant's Instagram Credit Post. At the time of registration, AKM-GSI and the Photographer were aware of Defendant's Instagram Credit Post months prior and registered the copyright for the sole purpose of bringing the instant lawsuit against Defendant. Further, Plaintiff did not obtain rights to the copyright until even later. Plaintiff, and all previous owners of the copyright, knew that the Snapshot Deposit Series was a derivative work because: (1) it is evident from the Snapshot Deposit Series that the underlying Prior Works are creative, copyrighted works fixed in a tangible medium; and (2) AKM-GSI had seen Defendant's Instagram Credit Post specifically crediting the creators of the Prior Works before it prepared the application to register a copyright in the Snapshot Deposit Series.

Under these circumstance, this action should be stayed (assuming that it is not dismissed on other grounds presented by this motion) to allow the statutory mandated inquiry to the Register and for receipt of the Register's response to that inquiry.

### 4. Defendant's Instagram Credit Post Is A Fair Use Of The Snapshot And Not an Infringement.

Finally, even if the Court finds that Plaintiff has standing, Defendant's Instagram Credit Post is fair use. The Copyright Act sets forth four factors that courts should use when determining whether use of a work constitutes fair use: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit education purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. All four factors here support that Defendant's Instagram Credit Post on her personal Instagram account constitutes fair use.

#### i. Purpose and Character of the Use.

When determining the purpose and character of the use, courts consider whether the use is transformative. "[T]he more transformative the new work, the less will be the

significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). The Supreme Court has noted:

> The enquiry here may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like, see § 107. The central purpose of this investigation is to see, in Justice Story's words, whether the new work merely "supersede[s] the objects" of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message: it asks in other words, whether and to what extent the new work is "transformative."

*Id.* Further, courts have found that adding commentary to original works is transformative. *Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708, 716 (E.D. Va 2018) (finding that adding commentary about photographs of celebrities "changes the way in which viewers experience the Photographs," and thus is transformative); *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 543 (S.D.N.Y 2019) ("Using a portion of an original work to identify and inform viewers about the subject of controversy can constitute transformative use.")

The Ninth Circuit has specifically held that non-transformative cases are ones "which make[] no alteration to the *expressive content or message* of the original work. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (finding Green Day's use of the *Scream Icon* was transformative because the original message did not have a religious message); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-20 (9th Cir. 2003) (use of exact replicas of artist's photographs as "thumbnail images" in a search engine was transformative because their purpose was completely transformed from their original use as fine art); *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 938-39 (9th Cir. 2002) (inclusion of copyrighted clip in video montage, using editing to increase dramatic effect, was transformative).

ACTIVE48547764

Here, Defendant transformed the Snapshot by cropping that photograph to focus on the Prior Works and by adding new commentary to the Snapshot giving credit and providing attribution to the designers/creators of the Prior Works. While the Photographer took the Snapshot to document Defendant's arrival to the 2016 Halloween Party, Defendant used the snapshot to add commentary and new information to honor and give credit to the creators/authors of the copyrighted Prior Works reproduced in the Snapshot. Thus, Defendant's Instagram Credit Post was transformative.

Moreover, according to the Complaint, Defendant reposted the Instagram Credit Post, but made no effort to commercially exploit the post. (Complaint ¶ 11.) Defendants original message in appearing in the Prior Works at the party was political, not commercial, and expressed Defendant's political support for Hillary Clinton shortly before the 2016 presidential election. Her Instagram Credit Post reflected a personal purpose – to credit the creators/authors of the underlying Prior Works—which was different than the photographer's purpose in taking the photograph – which was to commercially exploit Defendant's popularity for commercial gain. Further, Plaintiff's Complaint contains no facts that show Defendant profited from reposting the Instagram Credit Post and instead baselessly argues that all images on Defendant's Instagram are for "promotion." Not true. Moreover, even if Plaintiff could somehow allege facts showing that Defendant's Instagram Credit Post did serve a commercial purpose to enhance her brand and value, this factor is of "less significance" when the use is transformative. *Yang*, 405 F. Supp. 3d at 542-43 (citing *Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006).

Thus, Defendant's Instagram Credit Post was transformative and noncommercial in nature and favors a finding of fair use.

### ii.       The Nature of the Copyrighted Work.

The second factor when determining whether a use constitutes fair use explores the "value of the materials used." *Campbell*, 510 U.S. at 586. "This factor calls for recognition that some works are closer to the core of intended copyright protection than

others, with the consequences that fair use is more difficult to establish when the former works are copied." *Id.* Further, "[p]ublished works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) (citation and quotation omitted).

Here, the Snapshot is not a creative work but rather a factual work that is not the type of work intended for copyright protection. As noted above, it is also an unauthorized derivative work. The Photographer did not construct or create the message of the Snapshot, direct the positioning, hand gestures, or facial expressions of Defendant and her companions, nor create the underlying Prior Works, nor do anything except snap successive photographs, in which the underlying Prior Works pervade. Moreover, the Complaint admits that the work was published on the *same day* that Defendant made the Instagram Credit Post, and does not allege that Defendant was the first person to publish the photograph. (Compl., Ex. A.) Thus, the photographer's expression, if any, already occurred prior to Defendant's Instagram Credit Post. For these reasons the second factor weighs in favor of a finding of fair use.

### iii.      Amount and Value of the Portion Used.

In analyzing the third factor, courts examine the "quantity and value of the materials used." *Campbell*, 510 U.S. at 586. The extent of permissible copying varies according to the purpose and character of the use. *Id.* (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985) ("[E]ven substantial quotations might qualify as fair use in a review of a published work or a news account of a speech" but not in a scoop of a soon-to-be-published memoir); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007) (holding that even the copying of an entire image to allow users to recognize and decide whether to pursue more information about it was fair use). Moreover, this factor is related to the fourth factor and the degree to which the use serves as a market substitute. *Campbell*, 510 U.S. at 586.

Here, Defendant used enough of the Snapshot in her Instagram Credit Post to display the Prior Works for which her added commentary provided creator/author

attributions to the persons who created the Prior Works reproduced in the Snapshot - important information not provided in the original Snapshot. The third factor also weighs in favor of a finding of fair use.

### iv.    Effect of the Use Upon the Potential Market.

The fourth factor requires courts to examine the extent of market harm caused by the alleged infringement and whether widespread similar conduct would result in a substantially adverse impact on the market. *Campbell*, 510 U.S. at 590.[5] "If the intended use is for commercial gain, that likelihood [of adverse impact] may be presumed. But if it is for a noncommercial purpose, the likelihood must be demonstrated. *Id.* (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)).

Here, the Complaint fails to allege that Defendant's Instagram Credit post had any adverse effect on the market, much less that it had a substantially adverse impact. In fact, the Complaint admits that the Snapshot Deposit Series is in high demand. (Compl. ¶ 8.) Defendant's repost of the already published photograph on Instagram could not deprive Plaintiff of any revenue because Defendant does not claim the right to make her own license of the photograph to other publications. Accordingly, any future licenses of the Snapshot or other photographs in the Snapshot Deposit Series for commercial purposes would need to be obtained from Plaintiff (or from whoever are the copyright owners of the Prior Work).[6]

Further, the reasons why fair use protects Defendant against infringement claims are distinct and due to Defendant's own contributions to the photograph, including her personal contribution to artistic elements as described above and her added commentary

---

[5] In analyzing this factor in the instant case, it must be kept in mind that Plaintiff alleges that it acquired ownership of the purported copyright in the allegedly infringed Snapshot months if not years after the alleged infringement accrued with full knowledge of that supposed infringement and, never the less, alleges that Snapshot "is … valuable" apparently despite the alleged infringement. (Complaint ¶ 14)

[6] As noted earlier, it is doubtful that Plaintiff can commercial exploit the snapshot without the consent of the authors of the Prior Works.

giving credit to the authors of the underlying copyrighted Prior Works. Thus, nobody else is permitted to duplicate the Instagram Credit Post unless they do so in a manner that comports with the fair use doctrine.

Finally, Plaintiff's ability to theoretically profit from the Snapshot is directly tied to the Defendant's fame. The entire purpose of the paparazzi is to follow celebrities, wait outside of parties and other day-to-day spots that celebrities frequent, and to take whatever photographs they can get of the most famous celebrities possible. Paparazzi are not paid for their creative contributions made to photographs; instead, they are paid for the creative contributions made by the subjects of the photographs. In fact, the paparazzi are able to obtain better quality and more valuable photographs when celebrities subject and expose themselves to the photographer willingly. Here, Defendant and her companions did that and more. They composed a series of photographs where they as subjects positioned themselves directly towards the paparazzi, made gestures to send a message, and played along to enhance the photographs. In turn, the Snapshot was only possible because of Defendant and her companions' direct contributions. Moreover, the photograph here is also valuable because of the creativity of underlying Prior Works.

The fourth factor also weighs in favor of a finding of fair use.

Accordingly, even if the copyright registration for the Snapshot Deposit Series is valid and Plaintiff may pursue an infringement claim for its unauthorized derivative work, a consideration of the four fair use factors weigh overwhelmingly to a finding that Defendant's use of the Snapshot in her Instagram Credit Post was a fair use and not an infringement.

### 5.     Plaintiff's Contributory Infringement Claim Also Fails.

"One infringes [a copyright] contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Further, "there can be no contributory infringement absent actual infringement." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001), *as*

ACTIVE48547764

1 | *amended* (Apr. 3, 2001), *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d

2 | 1091 (9th Cir. 2002), and *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d

3 | 1091 (9th Cir. 2002) ("Traditionally, one who, with knowledge of the infringing activity,

4 | induces, causes or materially contributes to the infringing conduct of another, may be

5 | held liable as a 'contributory' infringer.) (citation and quotations omitted).

6 |    Here, the Complaint fleetingly alleges that Defendant committed contributory and

7 | vicarious liability by encouraging others to infringe Plaintiff's copyright. (Compl. ¶¶ 21,

8 | 26.) First, this argument fails because the underlying copyright infringement claim fails.

9 | Second, Plaintiff's Complaint fails to allege a single instance of a person other than

10 | Defendant supposedly infringing Plaintiff's copyright. Finally, Plaintiff's Complaint fails

11 | to allege that Defendant intentionally induced a third-party to violate Plaintiff's

12 | copyright. In fact, Defendant is in a unique position, where only her Instagram Credit

13 | Post is considered fair use and all other individuals would need to obtain a license from

14 | Plaintiff, and the true copyright owners of the Prior Works to exploit any of the

15 | photographs in the Snapshot Deposit Series.

16 |    Accordingly, all claims of vicarious and/or contributory infringement must be

17 | dismissed.

18 | **IV.** **CONCLUSION.**

19 |    Based on Plaintiff's lack of standing and the fair use of Defendant's Instagram

20 | Credit Post, there is no reasonable possibility that Plaintiff could cure the defects in its

21 | Complaint. Under these circumstances, the Court has wide discretion to deny Plaintiff

22 | leave to amend. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041

23 | (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may

24 |   //

25 |   //

26 |   //

27

28

ACTIVE48547764

dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."). Defendant asks the Court to grant the Motion without leave to amend and to dismiss this action.

Dated:  February 3, 2020

GREENBERG TRAURIG, LLP

By:   */s/ Vincent H. Chieffo*
Vincent H. Chieffo
Attorneys for Defendant Katheryn Hudson p/k/a Katy Perry

*ACTIVE48547764*